```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

MAGDONALD ADAMS-ERAZO, *et al.*,

    **Plaintiffs**,

            **v.**                        **Civil No.** 13-1918 (FAB)

HOSPITAL SAN GERARDO, *et al.*,

    **Defendants**.

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is the motion for summary judgment filed by defendant Hospital San Gerardo ("HSG"). (Docket No. 50.) For the reasons discussed below, the Court **DENIES** the motion.

## I. PROCEDURAL BACKGROUND

Plaintiffs, who are surviving family members of Eric Adams-Ramos ("Adams"), filed suit against HSG, Dr. Ramon Ochoa-Salcedo, and SIMED pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 §§ 5141-42. (Docket No. 1.) Plaintiffs alleged that defendants failed to screen, diagnose, stabilize, treat, and transfer Adams adequately when he arrived at the HSG emergency room with multiple gunshot wounds. Id.

Pursuant to a joint stipulation by the parties, (Docket No. 20), the Court dismissed the claims against SIMED on May 12, 2014, (Docket No. 24). Default was entered against defendant

Civil No. 13-1918 (FAB)                                                        2

Dr. Ramon Ochoa-Salcedo on May 13, 2014.  (Docket No. 26.) Defendant HSG moved the Court to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the facts alleged in the complaint did not state an EMTALA claim and that the Court should decline to exercise supplemental jurisdiction over the Puerto Rico tort law claims.  (Docket No. 17.)  On October 30, 2014, the Court granted HSG's motion to dismiss the EMTALA stabilization claim, but denied dismissal of the EMTALA screening claim and the supplemental Puerto Rico law claims. (Docket No. 47.)

Defendant HSG now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that the evidentiary record establishes that there is no genuine dispute of any material fact on plaintiffs' EMTALA screening claim.  (Docket No. 50.) Defendant HSG again urges the Court to decline to exercise supplemental jurisdiction over plaintiffs' Puerto Rico law claims. Id.  Plaintiffs opposed the motion, (Docket No. 54), and HSG replied, (Docket No. 59).

## II. SUMMARY JUDGMENT STANDARD

A court will grant summary judgment if the moving party shows, based on materials in the record, "that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodriguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina, 532 F.3d 28, 30 (1st Cir. 2008)).

At the summary judgment stage, a court must construe the entire record in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor. DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005). The court refrains from making credibility determinations and weighing the evidence. McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014). The court also disregards conclusory allegations and unsupported speculation. Id.

### III. EMTALA SCREENING CLAIM

To establish an EMTALA screening violation, a plaintiff must show that a patient arrived at a hospital emergency department seeking treatment and that the hospital did not "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition [existed]." 42 U.S.C. § 1395dd. The First Circuit Court of Appeals defines a hospital's EMTALA screening duty as follows:

> A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening

> examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints.

Correa v. Hosp. San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995). The essence is that there is "some screening procedure" and that it is "administered even-handedly." Id.

A hospital's screening protocols play a central role in its EMTALA screening duty. "When a hospital prescribes internal procedures for a screening examination, those internal procedures 'set the parameters for an appropriate screening.'" Cruz-Queipo v. Hosp. Espanol Auxilio Mutuo de Puerto Rico, 417 F.3d 67, 70 (1st Cir. 2005) (quoting Correa, 69 F.3d at 1193). "Whether a hospital's existing screening protocol was followed in a circumstance where triggering symptoms were identified by hospital emergency room staff is thus a touchstone in gauging uniform treatment." Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 717 F.3d 63, 69 (1st Cir. 2013); accord Correa, 69 F.3d at 1192 ("[A hospital's] refusal to follow regular screening procedures in a particular instance contravenes [EMTALA]."); Battle ex rel. Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 558 (5th Cir. 2000) ("Evidence that a hospital did not follow its own screening procedures can support a finding of EMTALA liability for disparate treatment.").

Civil No. 13-1918 (FAB)                                                5

In Cruz-Vazquez, the First Circuit Court of Appeals found that a trialworthy issue existed as to the plaintiff's EMTALA screening claim where the plaintiff presented vaginal bleeding in her third trimester and the defendant hospital did not perform testing requirements set forth in the hospital's "Gravid with 3rd Trimester Bleeding" protocol.[1]  717 F.3d at 69-71.  Similarly, in Cruz-Queipo, the court of appeals found that the defendant hospital was not entitled to summary judgment for an EMTALA screening claim where the hospital's triage policy required that a patient complaining of chest pain be assigned a triage Category II and the hospital assigned plaintiff to triage Category IV despite his chest pain complaint.[2]  417 F.3d at 70-71.  The court reasoned that the error in triage category assignment "marked a departure from the hospital's standards, which 'set the parameters for an appropriate screening.'"  Id. at 71 (quoting Correa, 69 F.3d at 1193).

Here, HSG has a protocol for screening patients with gunshot wounds.  See Docket No. 55-3.  The emergency room triage form identifies gunshot wounds as Adams's principal complaint, see

---

[1] The defendant hospital in Cruz-Vazquez stipulated that it failed to activate or follow the applicable protocol, including the protocol's requirement that certain laboratory tests be performed. 717 F.3d at 66.

[2] The defendant hospital's triage policy in Cruz-Queipo required the classification of emergency room patients into one of four categories, where "Category I encompasses the most serious conditions" and "Categories II, III, and IV encompass progressively less serious conditions."  417 F.3d at 68.

Docket No. 55-5 at p. 4, and triggers HSG's gunshot wound protocol. HSG, however, failed to perform a number of the protocol's requirements. For example, the protocol provides that the gunshot wound patient "should be completely undresse[d] to observe the perforations." (Docket No. 55-3 at p. 2.) There is no indication in Adams's medical records that HSG personnel removed his clothing. See Docket No. 55-5. The protocol also requires examination of the patient to determine the "exact location of the point of entry," the "size of the wound," and "the depth of the wound." (Docket No. 55-3 at p. 1.) Adams's medical records indicate that HSG personnel identified the locations of six gunshot wounds on Adams's face, shoulders, back, abdomen, and hand. (Docket No. 55-5 at p. 4.) There is no evidence, however, that HSG personnel determined the size or depth of these wounds. Furthermore, Adams's autopsy report reveals that he actually had nine gunshot wounds, see Docket No. 52-2 at pp. 2-4, thus HSG personnel failed to locate three of his wounds. Plaintiffs' proposed expert, Dr. Ian Cummings, stated during his deposition that one of the three wounds missed by HSG personnel was the wound on Adams's buttock, which was the wound that killed him. (Docket No. 55-2 at pp. 80-81.)

HSG's gunshot wound protocol also requires that a history be taken of "the time of the accident," the "distance, direction, [and] number of bullets shot," the "position of the patient upon falling," the "time that [the] last meal was ingested," and

Civil No. 13-1918 (FAB)                                                    7

"immunizations - Tetanus."  (Docket No. 55-3 at p. 1.)  Adams's medical records reveal that none of this information was recorded, see Docket No. 55-5, and no evidence otherwise indicates that HSG personnel ascertained this history.

    Despite these uncontested failures to adhere to the gunshot wound protocol when screening Adams, defendant HSG argues that there is no dispute that it satisfied its EMTALA screening duty because it "substantially complied" with the protocol.  (Docket No. 52 at p. 7.)  HSG contends that it performed "a great majority" of the protocol's requirements and the "few that were not done either could wait until the patient was sufficiently stable . . . or simply could not be done [due] to the severity of the condition of the patient."  Id. at p. 14.  That may or may not be correct, but that is not the issue.  HSG does not present evidence, however, that it routinely or uniformly disregards these protocol requirements - or that a different procedure is in place - when it screens patients who present complaints substantially similar to those Adams presented.  That is the issue.

    Because HSG did not remove Adams's clothing and failed to find three of his nine gunshot wounds, including the one that killed him, a reasonable jury could conclude that HSG did not provide Adams with a screening examination "reasonably calculated to identify critical medical conditions."  See Correa, 69 F.3d at 1192.  Even more, in light of the fact that HSG only partially

followed its gunshot wound protocol when screening Adams, a reasonable jury could find that HSG did not provide Adams with a screening examination uniform to the screening it provides patients presenting substantially similar complaints. See Cruz-Vazquez, 717 F.3d at 69; Cruz-Queipo, 417 F.3d at 70-71; Correa, 69 F.3d at 1192-93. There is thus a genuine dispute of material fact as to whether HSG provided Adams with an appropriate medical screening examination. Accordingly, defendant HSG's motion for summary judgment on plaintiffs' EMTALA screening claim is **DENIED.**

## IV. PUERTO RICO LAW CLAIMS

When a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over state law claims that form part of the same case or controversy. 28 U.S.C. § 1367(a). Because plaintiffs' EMTALA screening claim remains, the Court may exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). A court should consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving [supplemental] state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). In light of these factors, as well as plaintiffs' remaining EMTALA screening claim to ground jurisdiction, the Court will exercise its supplemental jurisdiction over plaintiffs' Puerto

Civil No. 13-1918 (FAB)                                              9

Rico law claims.  Accordingly, defendant HSG's motion to dismiss plaintiffs' Puerto Rico law claims is **DENIED**.

## V.  CONCLUSION

For the reasons explained above, the Court **DENIES** defendant HSG's motion for summary judgment, (Docket No. 50).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 24, 2015.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
